# IN THE UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## CIVIL ACTION NO. 5:24-CV-00008

Plaintiff,                                        )
                                                  )
**LETTY GILLIAM**                                 )
                                                  )          **AMENDED COMPLAINT**
v.                                                )
                                                  )          JURY TRIAL DEMAND
Defendant,                                        )
                                                  )
**WAKE COUNTY SHERIFF'S OFFICE,**                 )
**WAKE COUNTY BOAD OF**                           )
**COMMISSIONERS, ET. AL.**                        )

---

**NOW COMES** Plaintiff, **LETTY GILLIAM**, by and through undersigned counsel, Jonathan Stillo, and complains against Defendants' Wake County Sheriff's Office, hereinafter also, "WCSO" and Wake County Board of Commissioners, Et. Al. This amended complaint shall relate back to the original pleading under Rule 15 of the Federal Rules of Civil Procedure because this amended complaint arises from the same transactions and occurrences of the original complaint. See Federal Rules of Civil Procedure Rule 15.

## NATURE OF THE ACTION

Plaintiff brings this action against Defendants in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 et. seq. and §§ 12203, et seq. (the "ADA" or the "ADAAA"); to redress unlawful employment practices against Plaintiff. Defendant, WCSO, used intentional and systematic methods to

discriminate against Plaintiff, a qualified individual, based upon her disability. WCSO then retaliated against Plaintiff after she disputed such intentional and systematic discrimination placed upon her.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

2. This Court has personal jurisdiction over Defendant because it operates within the State of North Carolina and within this District.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to all claims occurred within the jurisdiction of this District.

## THE PARTIES

4. Plaintiff, Letty Gilliam, is a United States citizen who resides in Lillington, North Carolina and is employed by Defendant Wake County Sheriff's Office, hereinafter also, "WCSO." Plaintiff's primary work location for all relevant periods under this claim was Raleigh, North Carolina.

5. At all relevant times, all Defendants, who are North Carolina Government entities, were continuously doing business in the State of North Carolina and the City of Raleigh and has continuously had at least 15 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) (7).

7. At all relevant times, Defendant WCSO has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

8. Defendant Wake County Board of Commissioners funds the budget for WCSO and has a financial, legal, and fiduciary responsibility for the actions of WCSO.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

10. Plaintiff requested reasonable accommodations as detailed *infra*, all of which Defendant denied. Plaintiff suffered from discrimination, harassment, and a hostile work environment caused by WCSO because of her disability, detailed *infra*.

11. Plaintiff formally requested reasonable accommodations through both Defendants' respective attorneys, as well as WCSO Human Resources Department representatives. These accommodations were denied without WCSO offering any resemblance of an interactive process.

12. Defendant was stripped by WCSO of her title and position as Master Detention Officer on August 5th, 2022, and received a new title of Administrative Assistant, hereinafter also, "Office Assistant." Plaintiff protested this action by WCSO only to be threatened and coerced with termination of employment and workers compensation benefits unless she accepted such employment.

13. Plaintiff filed a timely charge against Defendant WCSO with the Equal Employment Opportunity Commission on January 22nd, 2023.

14. Plaintiff timely filed this complaint within 90 days of receiving her notice of Right to Sue from the EEOC on or after October 5th, 2023.

## RELEVANT FACTS

15. Plaintiff began employment with Wake County Sheriff's Office on November 28th, 2007 as a Probationary Detention Officer and worked her way up to Master Detention Officer on February 8th, 2011.

16. Ms. Gilliam held the position of Master Detention Officer until she was stripped of this title, without just cause, and coerced to accept the position Office Assistant on August 5th, 2022. Her only reasonable option was to accept WCSO's Office Assistant position or be terminated from her employment with WCSO altogether. WCSO also threatened to cease all workers compensation benefits if she didn't accept the Office Assistant position.

17. On October 23rd, 2020, Plaintiff was working for WCSO at the Wake County Detention Center when she injured her left shoulder and wrist. Wake County Sheriff's Office provided treatment for her workplace injury as required under N.C. Gen. Stat. Chapter 97, The North Carolina Workers Compensation Act, hereinafter also, "WCA".

18. Plaintiff was sent by Employer to an authorized physician of their choice who immediately diagnosed her with left arm/wrist injuries and placed work restrictions of "Right Hand Work Only."

19. Under the WCA, the Employer has exclusive authority to choose the authorized physician in a claim before the Industrial Commission, not the employee. In the case of a second opinion

under N.C. Gen Stat. § 97-25, both parties must agree on the physician or the Industrial Commission will choose the physician.

20. Wake County is self-insured for their Workers Compensation Policy that protects their nearly 4,500 employees. This creates an obvious and severe conflict of interest between the employer and the insurance policy overseeing their employees.

21. Even the North Carolina State Human Resources Manual portion regarding their self-insured workers compensation plan delegate a duty to employers to ensure injured employees receive benefits which are paid with State funds to which the employee is entitled under WCA while **controlling and containing** claim costs.

22. This conflict creates a motive for the employer, Defendants, to recover costs associated with their insurance expenditures through other means, such as:

    a. Stripping Plaintiff of her Master Detention Officer title, which, if no recourse is given, saves the County hundreds of thousands of dollars in yearly raises, potential promotions, and retirement benefits.

    b. Not allowing her an opportunity to certify as a detention officer but allowed her to take the physical certification examination for a detention officer twice after injury and once after surgery. Both exams, she passed. WCSO prohibited Plaintiff to take the examination because if Plaintiff were to pass the examination, their argument wouldn't hold merit and their opportunity to save the County hundreds of thousands of dollars over the course of Plaintiff's lifetime would diminish.

    c. We are still determining if there will be other currently unforeseen damages Plaintiff will face.

23. On October 26, 2020, November 2nd, 2020 and December 3rd, 2020, Ms. Gilliam's work restrictions are indefinitely extended by her authorized physician.

24. Plaintiff sought counsel around or about January 21st, 2021 to assist her in obtaining better care for her injuries. Not long after, Plaintiff received an MRI which revealed she had a fully torn rotator cuff, among other injuries.

25. On February 24, 2021: Plaintiff received an MRI and her new temporary work restrictions were modified indefinitely to: (1) no lifting, pushing, or pulling greater than thirty (30) lbs. with her left arm and (2) no overhead use of left arm.

26. Plaintiff was sent to Dr. Karl Bowman for treatment and elected to have surgery on May 7th, 2021 to perform an arthroscopy and repair her torn rotator cuff with subacromial decompression.

27. On May 7th, Plaintiff was ordered out of work to recover from her invasive surgery until July 28th, 2021, at which time her restriction was sedentary work only.

28. On December 1st, 2021, Plaintiff is released of all work restrictions and released to full duty. Plaintiff remained under full duty, no restrictions until her last appointment with Dr. Bowman on July 6th, 2022, a period of time covering 31 straight weeks. During this time, Plaintiff attended work each day, each week, each month, without issue.

29. After her injury and prior to her surgery, Plaintiff passed the physical portion of the Detention Officer Recertification process. Furthermore, Plaintiff passed her Detention Officer Recertification after her surgery, and could pass this test today if given the opportunity, which WCSO has refused to allow, after several requests by Plaintiff. Such action by Defendants can only be regarded as retaliatory.

30. On May 12, 2022, Dr. Bowman maintained his full duty with no restrictions and ordered a Functional Capacity Examination, hereinafter also, "FCE", but stated in his notes that he feared the physician administering the FCE would place permanent work restrictions on Plaintiff. However, he went ahead and ordered the FCE anyway.

31. On June 02, 2022, Plaintiff undertook the FCE to determine if she can perform the essential functions of a detention officer. At this time she has already been full duty, amongst inmates for over 7 months without issue. The results of this test had two primary conclusions: (1) Plaintiff exhibited maximum effort during the entire examination and (2) Plaintiff can continue to perform all the essential functions of a detention officer without any restrictions.

32. On July 6th, 2022, Plaintiff saw Dr. Bowman for the last time and determined she was at Maximum Medical Improvement. In contradiction with his own orders during the last 7 months and the FCE, Dr. Bowman placed a permanent work restriction of no overhead lifting above 10 lbs. for Plaintiff. This is not an essential function of the position under their physical certification or any of their numerous job descriptions.

33. In Fact, Deputy County Attorney Jennifer Jones stated, " Why would anyone lift anything over their head" in an email to Plaintiff Attorney Jonathan Stillo.

34. On July 8th, 2022 Wake County Attorney Jennifer Jones indicated that Plaintiff had a permanent restriction and could not be a detention officer. Ms. Jones gave no specific reason nor did they offer an interactive process to determine whether any reasonable accommodation could be given to allow Plaintiff to remain in her role as Master Detention Officer.

35. Plaintiff persistently requested to remain as a detention officer and requested a second opinion from her primary physician. However, Wake County made it clear that no other opinion would

change their decision even if the opinion contradicted Dr. Bowman's restriction. Furthermore, WCSO made it clear that any contradiction in Orders would result in years of litigation.

36. Upon information and belief, Wake County had treated similarly situated detention officers differently for years, and allowed accommodations to permanent work restrictions, but not for Plaintiff.

37. Plaintiff is not entitled to the same overtime opportunities in her role as administrative assistant versus her role as a detention officer.

38. Plaintiff is not entitled to yearly raises as she would have received being a Master Detention Officer.

39. Plaintiff is not entitled to her full retirement benefits because of her change in position from Master Detention Officer to administrative assistant.

40. Plaintiff has began to suffer from depression since her workplace injury and subsequent treatment by Employer.

**FIRST CLAIM FOR RELIEF-DISCRIMINATION**

**(Disparate Treatment/Failure to Accommodate)**

**In Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq.**

**(ADAAA)**

41. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

42. Plaintiff has a disability that is a protected activity which Wake County Sheriff's Office causally used to demote her from Master Detention Officer to Office Assistant.

43. Upon information and belief, Dr. Bowman placed his permanent work restriction on Plaintiff to support WCSO's argument that Plaintiff could not remain as a detention officer.

44. However, the work restriction actually does not prohibit her from performing the essential functions of her position as Master Detention Officer. In fact, for 7 months prior to the permanent work restriction, Plaintiff, Dr. Bowman, the FCE physician and WCSO placed her amongst inmates every day and without any restriction.

45. The FCE physician determined Plaintiff could perform all the essential functions of her position as Master Detention Officer. Dr. Bowman didn't want to set up the FCE because he feared of a permanent restriction but after the FCE did not give a permanent restriction, Dr. Bowman felt compelled to give a permanent restriction, upon objection of Plaintiff and evidence to support his new restriction.

46. We allege WCSO stripped Plaintiff of her Master Detention Officer Title without justification in some elaborate and sophisticated plan to recoup money spent on her workers compensation injury. This title she earned over 15 years working holidays and overtime, routinely, and then forced her to take a position as office assistant.

47. Upon information and belief, WCSO intentionally stripped her of her title to save the County a lot of money over the course of her career and retirement. Furthermore, there was no interactive process taken with Plaintiff to address possible accommodations for her work restriction of not lifting overhead 10lbs.

48. Plaintiff offered several different accommodation requests to Defendants including:

    (a) Working in the control room where she spent a good deal of time working after her injury. This position was necessary to the function of the jail and was short staffed, insofar as employing civilians to work these shifts.

(b) Having another Officer with her during inmate contact if WCSO was worried about her safety because of her work restriction of not lifting over 10 lbs overhead. First, 7 months prior to the restriction she was alone with inmates without issue or complaint. Second, the day WCSO found out about this restriction they required her to complete her shift. WCSO has completely lost their credibility.

(c) Having her promoted to a position that didn't involve as much inmate contact. There have been several promotions that Plaintiff qualified to receive which would relieve WCSO of their inmate contact concerns, such as Captain Detention Officer.

49. Furthermore, her work restriction of no overhead lifting didn't stop her from performing the essential functions of the position or recertifying as a Master Detention Officer twice after her injury and once after her surgery.

50. Plaintiff has suffered extreme depression, financial losses, and embarrassment amongst her peers by her demotion and seeks to recover all damages including but not limited too compensatory, incidental, and punitive damages.

**SECOND CLAIM FOR RELIEF - RETALIATION**

**In Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. (ADAAA) and Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794 et seq. (Rehabilitation Act)**

51. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

52. Plaintiff was stripped of her title as detention officer because she filed a workers compensation claim and her resulting disability placed upon her by Dr. Bowman. Also, she was retaliated against for standing up for herself after disparate treatment by WCSO.

53. In order to save the County money, they conspired with Dr. Bowman to strip Plaintiff of her title, overtime opportunities, retirement benefits, as well as other emotional harm she suffered.

54. Then, WCSO threatened to fire her and strip her of any Workers Compensation benefits if she didn't take the position of Office Assistant. She was coerced to take this position in a manner similar to the Mafia; an offer she truly couldn't refuse.

55. She was not able to even take the recertification test after WCSO prohibited her from returning to her role as Master Detention Officer, in retaliation of her disputing the determination. Also, their argument wouldn't hold merit, even though it currently doesn't, if Plaintiff passed the recertification yet again after her injury and surgery.

56. Plaintiff went to the new Sheriff and requested that she be given an interactive process, as required by law, and showed the newly elected Sherriff her May 12th, 2022 work status and full duty. She wanted her file examined by the new chief of WCSO but was instead written up and threatened to be terminated for submitting "fraudulent documents" in order to be reinstated to her position of Master Detention Officer.

57. This retaliation by Defendants resulted in compensatory, incidental, and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discrimination against individuals because of their disabilities, including discrimination in hiring, firing, failing to provide reasonable accommodation to qualified individuals with disabilities, and any other employment practice which discriminates on the basis of disability.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Friend Whole by providing appropriate back pay with prejudgment interest, in amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful-place hiring and front pay.

D.     Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

E.     Order Defendant to make Plaintiff whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of civil rights and other non-pecuniary losses pain, in amounts to be determined at trial.

F.     Order Defendant to pay Plaintiff punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised in its complaint.

Respectfully Submitted,

This is the 9th day of April, 2024

Jonathan Stillo
The Law Office of J.W. Stillo, PLLC
4242 Six Forks Road, Suite 1550
Raleigh, NC 27609
Phone: (984)220-8270
Fax: (984)220-4301
Email: JonStillo@JWStillo.com
ATTORNEY FOR PLAINTIFF